OPINION OF THE COURT
Lizbeth González, J.
Eric T. Schneiderman, Attorney General of the State of New York, filed the underlying special proceeding on behalf of the People of the State of New York (NYS) pursuant to Executive Law § 63 (12); Education Law §§ 6802, 6811, 6815; Agriculture and Markets Law § 194; and General Business Law §§ 130, 349 and 350. NYS seeks injunctive relief, restitution, damages and civil penalties against respondent Michael A. Jamail, doing business as Surrealistic Sensations, for false labeling, *942 misbranding, false advertising, engaging in deceptive practices and for not registering his business with the county clerk’s office or the NYS Education Department. A temporary restraining order was signed by this court; a preliminary injunction issued after oral argument with the same terms is in effect.
Respondent Michael Jamail owns and founded Surrealistic Sensations, an online business operated from his residence in Lackawanna, New York 14218. Surrealistic self-describes as a worldwide company in the field of ethnobotany specializing in extracts of rare medicinal, psychoactive and oneirogenic (dream enhancing) botanicals. (Surrealistic Sensations, http:// www.surrealisticsensations.com.) Surrealistic Sensations uses its website, Facebook page (FB) and YouTube to promote its resins, herbal e-juices, tinctures and seeds. Mr. Jamail concedes in his supporting affidavit that his company has no certificate of registration as required by General Business Law § 130.
NYS maintains that the respondent’s ethnobotanical products are designer drugs that are promoted as safe for human consumption and then insufficiently labeled, thus depriving consumers from making informed decisions about the products they purchase or their health risks. The respondent contends that his products are properly labeled and maintains that Surrealistic Sensations does not encourage its customer to ingest or smoke any of the products it manufactures, sells or distributes. The petitioner’s motion for a permanent injunction is granted and the respondent’s motion to change venue from Bronx County to Erie County is denied for the reasons set forth below.
Relevant Statutes, Regulations and Definitions
Section 6802 (7) (b) of the Education Law broadly defines “drugs” as articles, other than food, that are “intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man or animals.”
Section 6808 (1) of the Education Law states: “No person, firm, corporation or association shall possess drugs, prescriptions or poisons for the purpose of compounding, dispensing, retailing, wholesaling, or manufacturing, or shall offer drugs, prescriptions or poisons for sale at retail or wholesale unless registered by the department as a pharmacy, wholesaler, manufacturer or outsourcing facility.”
Section 191 (1) (b) of the Agriculture and Markets Law defines “consumer commodities” to include non-prescription drugs.
*943 1 NYCRR 221.2 (e) defines “label” as any written, printed or graphic matter that is affixed to a consumer commodity for purposes of branding, identifying or providing information with respect to the commodity or package contents.
Section 194 of the Agriculture and Markets Law prohibits descriptions or labels on a commodity intended to be sold that falsely describes its number, quantity, weight or measure.
Section 6815 (2) of the Education Law provides that a drug is “misbranded” where, inter alia, its label fails to bear a label containing the name and place of business of its manufacturer, packer or distributor; an accurate statement of the quantity of its contents, including weight, measure or numerical count; adequate instructions for use; adequate instructions against use by those in pathological conditions or by children, or as to unsafe dosages; and recommended frequency or duration.
Section 130 of the General Business Law provides that a person who conducts or transacts business in New York State under any name or designation other than his or her real name must file a certificate providing the name or designation with the office of the clerk of each county in which such business is conducted or transacted.
Section 349 of the General Business Law empowers the Attorney General to seek injunctive relief, restitution and civil penalties when a person has engaged in deceptive acts or practices or false advertising in the conduct of any business.
Section 350 of the General Business Law states that false advertising in the conduct of any business, trade or commerce is unlawful.
Section 63 (12) of the Executive Law empowers the Attorney General to seek injunctive relief, restitution, damages and costs when any person engages in or otherwise demonstrates repeated or persistent fraud or illegality in the transaction of business. The word “fraud” or “fraudulent” includes any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense or unconscionable contractual provisions.
“Psychoactive” is defined as “pertaining to a drug or other agent that affects such normal mental functioning as mood, behavior, or thinking processes, such as stimulants, sedatives or hallucinogens.” (Mosby’s Dictionary of Medicine, Nursing & Health Professions 1542 [8th ed 2009].)
A “benzodiazepine derívate” is defined as one of a group of psychotropic agents, including the tranquilizers chlordiazepox *944 ide, diazepam, oxazepam, lorazepam, and clorazepate, prescribed to alleviate anxiety, and the hypnotics flurazepam and triazolam, prescribed in the treatment of insomnia. Tolerance and physical dependence occur with prolonged high dosage. (Mosby’s Dictionary of Medicine, Nursing & Health Professions 204 [8th ed 2009].)
“MAO” is the abbreviation for monoamine oxidase; monoamine oxidase inhibitors are a class of medication used to treat depression. (Brian Krans, What are MAO Inhibitors?, Health-line, http://www.healthline.com/health-slideshow/what-aremao-inhibitors; see Jess G. Fiedorowicz & Karen L. Swartz, The Role of Monoamine Oxidase Inhibitors in Current Psychiatric Practice, 10 J of Psychiatric Prac [No. 4], 239-248 [July 2004].)
Undercover Investigation
In support of its motion, the Office of the NYS Attorney General (OAG) submits the affidavit of Chad A. Shelmidine, an OAG senior investigator (SI). Posing as a wholesale customer, SI Shelmidine purchased 17 different products.
On September 11, 2015, SI Shelmidine spoke with “Mike” at the contact number listed on Surrealistic’s website to purchase the following products for a store that he allegedly planned to open in Niagara Falls:
1. E-Juice: (4) Blue Lotus, (4) Kava Kava, (4) Guaraña, (4) Damiana, (4) Wild Lettuce, (4) Wild Dagga, (4) Kanna and (4) Coleus Blumei, packaged in 5ml bottles;
2. Tincture: (2) California Poppy and (2) 30ml Kava Kava, packaged in bottles; and
3. Resin: (4) small plastic bags of lg Wormwood Resin 5Ox.[1]
On September 17, 2015, SI Shelmidine traveled with SI Jennifer Hill to Mike’s residence to pick up the order as agreed. At their meeting, Investigator Shelmidine recognized Mike’s voice; he later identified Mike through photographs as respondent Michael A. Jamail, the owner of Surrealistic Sensations.
On September 16, 2015, the day before the scheduled pick up, SI Shelmidine called Mike on behalf of a person who allegedly wanted to open a store in the Bronx. This slightly different order included individual bottles of Indian Warrior, Dream *945 Root and Betel Nut e-juice and Wild Dagga tincture. On September 22, 2015, the investigator placed a separate order for Syrian Rue e-juice. On September 28, 2015, SI Shelmidine placed an order similar to his September 11, 2015 initial order with the addition of eight pieces of Kava Kava chocolate candy. Surrealistic shipped the September 16, 2015, September 22, 2015 and September 28, 2015 orders to a Bronx address.
Online Representations
Surrealistic states on its Facebook page that its extracts are lab quality medicine. (FB, Sept. 28, 2013.) Surrealistic states on its website that its Syrian Rue seeds are a MAO inhibitor and that California Poppy “may act like benzodiazepines.” The respondent represents that its herbal candy is an extraction of psychoactive and medicinal botanicals.
Surrealistic’s FB page notes that because of its sedative properties, California Poppy has been used in the treatment of behavioral disorders such as ADD and ADHD in children and adults. (FB, June 11, 2013.)
The respondent’s website describes its Wild Dagga product as a cannabis substitute. A video posted on the Surrealistic website and on YouTube describes its e-juices as “an extract of your favorite herbs and ethnobotanicals, formulated for use in electronic cigarettes with the added benefit of medicinal and psychoactive effects. Our product ... is sold in volumes of 5 ml, 10 ml, 15 ml or 30 ml.”
Medical Impact
NYS proffers the affidavit of Maja Lundborg-Gray, M.D., a board-certified physician in emergency medicine who oversees the emergency department at Samaritan Medical Center in Watertown, New York, to establish that Surrealistic sells street drug alternatives designed to circumvent existing drug laws. In her experience, the respondent’s products mirror the psychoactive effects of many illegal drugs referred to as “designer drugs.” According to Dr. Lundborg-Gray, designer drugs “are intended to stimulate, sedate, or cause hallucinations or euphoria when ingested or inhaled . . . Designer drugs include not just synthetic marijuana and bath salts, but also a rapidly expanding field of ‘botanic’ chemicals . . . distilled from products such as kava kava, California poppy, damiana, [and] blue lotus.”
According to the affiant, designer drugs can take the form of e-liquids, tinctures and candy; their active ingredients may be *946 derived from psychoactive plants, chemicals synthesized in a lab or a combined process. Their psychoactive effects include sedation, euphoria, mood enhancement and hallucinations. Surrealistic markets its products as health products with “medicinal benefits” such as treating “anxiety, depression and insomnia” and at least one product to prevent cancer (Kava Kava).
With respect to the items purchased by SI Shelmidine, Dr. Lundborg-Gray notes that these products can cause serious health effects such as tachycardia (rapid heartbeat), hallucinations, seizures, extreme paranoia, panic, agitation, vomiting, mood swings, intense cravings to re-dose, suicidal or homicidal thoughts or even death. Dr. Lundborg-Gray categorically states that “unlabeled, misbranded and misleadingly labeled designer drugs . . . pose an unreasonable risk of physical harm to the consuming public, and create an extremely dangerous condition.” Because patients who have taken stimulants are frequently violent and assaultive on first presentation, first responders unaware of the identity of recently ingested drugs or substances are placed at risk. In similar measure, the lack of proper labeling impedes medical and nursing staff in evaluating and stabilizing patients “intoxicated with these drugs.”
“Unlike many ‘street’ drugs which our patients can commonly identify, victims of these designer drugs typically do not know the ingredients of the products they have purchased and consumed. Furthermore, even if the product name is known and disclosed, they are often labeled ‘not for human consumption’ and provide no information as to possible health effects.
“For many of the presenting patients, it is difficult to differentiate between a true psychiatric episode and the effects of these new, undisclosed intoxicants.”
The respondent proffers no physician’s affidavit in rebuttal, nor that of any other professional.
Poisonous Substances
Although Surrealistic’s FB page states that some of its ethnobotanicals are poisonous, it provides no further information (https://www.facebook.com/SurrealisticSensations/info/ ?tab=overview). Its labels have no warnings. Instead, the respondent’s website and FB page respectively display the following general disclaimer:
*947 “By placing an order, you agree to this disclaimer: All of the ethnobotanicals available from this site are sold for research, education and propagation purposes only. We do not sell any tobacco related products or recreational drugs. The herbáis available have not been evaluated by the Food and Drug Administration. Herbáis listed are not intended to diagnose, treat, cure or prevent any disease. Research all herbáis before using. Use at your own risk. Customers must be over 18 years of age to purchase anything from this site. Surrealistic Sensations, anyone and anything related to surrealistic sensations [sic] and this site cannot be held accountable for any of your actions or choices.”
Surrealistic sells the seeds of Datura stramonium. The court notes that Datura is a night-blooming plant known for the highly poisonous and hallucinogenic properties of all of its parts, including seeds and leaves. The respondent describes Datura on its website as follows:
“Datura is another member of the solanacea [sic] family. It is a cousin to Mandrake, Henbane, and Belladonna. Datura has been utilized as a shamanic, magical, and religious tool for centuries. She is a very powerful plant that the Aztecs considered sacred. Datura was sprinkled around the home to break spells. Leaves of Datura were placed in pillows to help insomnia.”
The Massachusetts/Rhode Island Poison Control System and the Journal of Paediatrics & Child Health describe Datura differently:
“Like many members of the family Solanaceae, Datura contains alkaloid tropanes and has a history of ritualistic usage. The leaves can be smoked or the seeds can be crushed and used in drinks . . . Datura stramonium, also known as Jimson Weed, is a commonly abused, dangerous hallucinogen that is wide-spread in temperate regions . . . Today Datura seeds are most commonly crushed and consumed for intentional intoxication.” (Massachusetts/Rhode Island Poison Control System, DATURA Plant Poisoning, 23 Clinical Toxicology Rev [No. 6], 1 [Mar. 2001].)
“Over the course of the summer of 2006, four adolescent patients were hospitalized because of intentional Datura stramonium (Angel’s Trumpet) *948 ingestion . . . All four patients had a decreased level of consciousness measured by the Glasgow Coma Scale, visual hallucinations, dilated pupils and agitation. The changes in mental status are characteristic of delirium.” (Tannis H. Wiebe, Eric S. Sigurdson & Laurence Y. Katz, Angel’s Trumpet [Datura stramonium] Poisoning and Delirium in Adolescents in Winnipeg, Manitoba: Summer 2006, 13 Paediatrics & Child Health [No. 3], 193-196 [Mar. 2008].)
E-Juices
Surrealistic portrays itself as the first company to offer herbal e-juice, “an extract of your favorite herbs and ethnobotanicals, formulated for use in electronic cigarettes with the added benefit of medicinal and psychoactive effects.” (Surrealistic Sensations, Herbal E-Juice, http://www.surrealisticsensations.eom/#Ihebal-e —juice/cfvg.)
Respondent argues that the labels on his e-juice bottles are adequate since they indicate both the scientific and plant name of the product, volume quantity, the name of his company, the website address, the mailing address including his proper name, the appropriate dosage amount, an extract amount and a disclaimer that “[t]his product is not intended to diagnose, treat or cure any disease.” The court notes that with the exception of the scientific, plant and company names, much of this information is barely legible.
The respondent uses potent terms to describe his e-juices such as: psychoactive (Blue Lotus), euphoria (Kava Kava), stimulant (Guaraña), drug (Damiana, Guaraña), Cannabis substitute (Wild Dagga); mind-altering effects (Coleus Blumei), sedation (Wild Lettuce), vivid dreaming (Dream Root), pain reliever and enhanced focus (Indian Warrior), heightened alertness (Betel Nut) and MAO inhibitor (Syrian Rue). This product information is undisclosed on bottle labels and was omitted from the four shipments sent to petitioner’s undercover investigator.
Tinctures
Surrealistic implies that its extracts are made with alcohol and its e-juices are made with glycerin but as with its other products, there is no actual description of ingredients.[2] The respondent’s website and FB page attribute the following properties to the tinctures purchased by SI Shelmidine:

*949
“California Poppy

“• The compounds in California Poppy are known as alkaloids, and they may act as benzodiazepine . . . Additionally, this herbal extract has also been proven to improve intellectual capacity.
“• Because of [its] sedative properties, it has also been used in the treatment of behavioral disorders such as ADD and ADHD in children and adults . . . As an analgesic and antispasmodic, Poppy has been found to be useful in the relief of acute nerve and muscle centered aches and pains.” (FB, June 11, 2013.)

“Kava Kava

“• Clear thinking, calmness, relaxed muscles, sedation, mild euphoria a sense of well-being are all qualities of our exiting [sic] new extract!

“Wild Dagga

“• Wild Dagga will produce feelings of relaxation, sedation and a wonderful state of well being [sic]. These effects are said to be caused by the primary alkaloid Leonurine. Due to its euphoric effects.”
Resins
The Surrealistic website describes its botanical resins as “extractions of plant material, taken from the entire plant, or specific parts of the plant, depending on the purpose and desired effect.” (Surrealistic Sensations, Resins, http:// www.surrealisticsensations.com/#!resins/cqtf.) According to the respondent, the active components of a plant can be concentrated into resinous extracts, greatly reducing the volume and amounts needed for effective use, that can be smoked or drunk as tea.
In a possible contradiction, the respondent describes its Wormwood resin as a cardiac and psychic stimulant that is also slightly anesthetic.
*950 Herbal Candy
“Extremely convenient and hassle free Herbal infused candy! Our candy was synthesized using premium Kava extract powder for the highest quality and potency! Herbal candy is an extraction of your favorite psychoactive and medicinal botanicals.
“Our herbal candy is one of a kind and only available through Surrealistic sensations. The active components of a plant are highly concentrated into the candy, greatly reducing the amounts for 2 pieces weighing at a total of 6g.” (FB, Nov. 8, 2014.)
Dosage
The respondent has no known training or qualifications. He discusses “Chemistry and the Biology of Herbs” in a lengthy January 7, 2015 FB post that states in pertinent part:
“Herbalists tend to use extracts from parts of plants, such as the roots or leaves but not isolate particular phytochemicals. Pharmaceutical medicine prefers single ingredients on the grounds that dosage can be more easily quantified. It is also possible to patent single compounds, and therefore generate income. Herbalists often reject the notion of a single active ingredient, arguing that the different phytochemicals present in many herbs will interact to enhance the therapeutic effects of the herb and dilute toxicity. Furthermore, they argue that a single ingredient may contribute to multiple effects.”
Although the respondent’s passage “rejects the notion” of single active ingredients, his products purport to be just that. Significantly, an all-inclusive dosage of 0.5-1.5 ml is printed on all e-juice labels; there are no health risk warnings or daily máximums.
Venue
Venue is generally placed in the county where one of the parties resides. (CPLR 503.) The Attorney General is a resident of every county in New York State and filed the underlying special proceeding in Bronx County. The respondent, who resides in Erie County, seeks to transfer venue from Bronx County to Erie County on the ground of witness inconvenience. The convenience of the parties or their employees, however, is not considered in determining a CPLR 510 (3) motion for change of venue. (MacRobbie v Olivio, 200 AD2d 373 [1st Dept 1994]; Coles v LaGuardia Med. Group, 161 AD2d 166 [1st Dept 1990].)
*951 CPLR 510 (3) authorizes a discretionary change of venue where the convenience of material witnesses and the ends of justice will be promoted by the change. Five elements must be established by a movant seeking to demonstrate that the convenience of material witnesses would be better served by a change of venue: (1) the identity of the proposed witnesses, (2) the manner in which they will be inconvenienced by a trial held in the county where the action was commenced, (3) proof that the witnesses were contacted and are willing and able to serve for the movant, (4) the nature of the anticipated testimony, and (5) the manner in which the anticipated testimony is material to the issues raised in the case. (Rodriguez-Lebron v Sunoco, Inc., 18 AD3d 275 [1st Dept 2005]; Fernandes v F.N. Projects, 214 AD2d 525 [1st Dept 1995]; Cardona v Aggressive Heating, 180 AD2d 572 [1st Dept 1992].)
The respondent maintains that the convenience of SI Shelmidine and Dr. Lundborg-Gray and 5 to 10 witnesses will be promoted by changing the venue of this action from Bronx County to Erie County. The respondent fails, however, to disclose the identity of his proposed witnesses, other than adverse witnesses, or the manner in which his proposed witnesses will be inconvenienced by a trial in Bronx County. (T.D.M. v Pipala, 223 AD2d 419 [1st Dept 1996].) In similar measure, there is no proof that the respondent contacted either adverse witness. The court accordingly finds that the respondent has failed to meet his burden of going forward and denies his motion to change venue.
Analysis of OAC’s Petition
The instant action is a special proceeding commenced by the Attorney General pursuant to article 4 of the Civil Practice Law and Rules. The respondent’s answer and papers do not challenge the nature of the proceeding nor claim that a plenary action should have been instituted. The parties submitted all papers at a hearing following the court’s issuance of the temporary restraining order. The court, pursuant to CPLR 409 (a), was provided with small bottles of Blue Lotus, Damiana and Kava Kava e-juice, a one-ounce bottle of California Poppy tincture and a one-gram packet of Wormwood resin. The court notes that much of the labeling is too tiny to read.
CPLR 409 (b) states that in deciding a special proceeding where no triable issues of fact are raised, the court shall make a summary determination upon the pleadings, papers and admissions and make any orders permitted on a motion for *952 summary judgment. The parties do not address the applicable standard of proof that must be met with respect to each of the petitioner’s multiple allegations. To the extent that the bulk of the Attorney General’s allegations sound in fraud and the standard of proof for common-law fraud is clear and convincing evidence, the court accordingly applies that heightened standard of proof, a standard favorable to the respondent. The court relies on both the doctor’s affidavit and the respondent’s admissions in determining that the petitioner has met its burden of proof by clear and convincing evidence.
The court draws on the unrebutted affidavit of Maja Lundborg-Gray, M.D., who avers that the products sold to petitioner’s undercover investigator are designer drugs intended to stimulate, sedate or cause hallucinations or euphoria when ingested or inhaled. Surrealistic maintains Dr. Lundborg-Gray’s affidavit must be discredited because NYS proffers no proof of testing the respondent’s products. This argument, however, begs the question.
The court credits Mr. Jamail’s representation that he sells lab quality medicine and drugs, finds that the respondent fails to raise a viable defense and determines that there is no issue of triable fact. The appellation “designer drug” is not dispositive.
Here, the stark contrast between Surrealistic’s online representations and the labeling of its ethnobotanical products is alarming. To the extent that the respondent’s products are described or classified as possessing properties that are psychoactive, medicinal, oneirogenic (dream enhancing), cardiac stimulants, anesthetic, MAO inhibitors, capable of acting as benzodiazepines, containing sedative properties or possessing mind-altering effects, his ethnobotanical products are hereby deemed to be drugs and thus a consumer commodity, pursuant to the laws of the State of New York. (See Education Law § 6802 [7] [b]; Agriculture and Markets Law § 191.)
All packaging of the respondent’s ethnobotanicals must accordingly be labeled pursuant to all applicable laws and regulations to include not only the number, quantity, weight and measure of such commodity, but also their ingredients, potential health risks and proper dosage. (Education Law §6815 [2].)
The court finds that the respondent has engaged in deceptive practices and false advertising pursuant to General Business Law §§ 349 and 350, respectively. The respondent’s products *953 are clearly misbranded. The paucity and illegibility of the respondent’s labeling constitute a persistent and fraudulent misrepresentation that is injurious to the public. (Executive Law § 63 [12].) The respondent is accordingly subject to civil penalties for his deceptive acts. (General Business Law § 350-d.) To the extent that the respondent admits that he failed to file a certificate of registration as required by General Business Law § 130, he is subject to additional penalties.
Conclusion
After careful consideration and review, the court grants the application of the NYS Attorney General on behalf of the State of New York to permanently enjoin respondent Michael A. Jamail, doing business as Surrealistic Sensations, from engaging in unlawful conduct as set forth above. The respondent is directed to comply with all applicable state, local and federal labeling requirements with respect to the sale, distribution and promotion of his ethnobotanical products forthwith. The respondent shall also provide forthwith to the Attorney General an accounting of all commodities sold or offered for sale from January 1, 2012 to October 5, 2015, including the product name, the manufacturer or distributor, a description of the product, its retail price and the number of units sold.
The respondent’s motion to change venue is denied since he sold his products in Bronx County and his stated inconvenience is insufficient.

. Price structure: The e-juice cost $10 per bottle; the tinctures cost $30 per bottle; and the resin cost $9.50 per packet. Mr. Jamail provided a 35% wholesale discount reducing the investigator’s bill for the initial September 11, 2015 order to $284.70, plus $10.50 for shipping and handling.

. The Surrealistic website states that
*949 “[a]n extract is a preparation of plant extracts made with alcohol . . . while those produced with glycerin are glycerites such as are herbal e-juice. It is believed that an herbal extract is often more effective than pills or capsules containing the same herbs . . .
“The tincture can be administered effortlessly and conveniently sublingually (under the Tung) or add the tincture to water, tea or juice. The concentrated fluid extraction is an excellent way to administer the healing power of plants.” (Surrealistic Sensations, Tinctures, http://www.surrealisticsensations.com/ #!tinctures/clfaw.)